**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**UNITED STATES OF AMERICA,**                                    **CASE NO.  20-CR-20245-RNS-1**

                                   **Plaintiff,**

**vs.**

**JONATHAN GUERRA BLANCO,**

                                   **Defendant.**

_____/

**DEFENDANT, JONATHAN GUERRA BLANCO'S**
**OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT**

**COMES NOW** the Defendant, **JONATHAN GUERRA BLANCO**, by and through his

undersigned counsel, and presents herewith, his Objections to the Presentence Investigation Report

("PSI") [D.E. 35], and states as follows:

1.      **Objection to Paragraph 54:  "Victim Related Adjustment"**

The Defendant objects to paragraph 54 of the PSI insofar as it states, "Pursuant to §18

U.S.C. §2332b(g)(5), because the offense was calculated to influence or affect the conduct of

government by intimidation or coercion, or to retaliate against government conduct and is an

offense enumerated in 18 U.S.C. §2332b(g)(5)(B)(i), it qualifies as a "federal crime of terrorism."

The instant offense of conviction of conspiracy to provide material support and resources to a

foreign terrorist organization is a Class C felony offense, in violation of 18 U.S.C. §2339B(a)(1).

Because the offense is a felony that involved, or was intended to promote, a federal crime of

terrorism, 12 levels are added, §3A1.4(a)."

It is respectfully submitted that the Defendant's criminal conduct in the case at bar does

not warrant the application of U.S.S.G. §3A1.4 as discussed in great detail below.

Although, the Defendant did enter his plea of guilty to an offense that charges him with providing material support to a foreign terrorist organization in violation of 18 U.S.C. §2339B(a)(1), that does not *per se* or automatically invoke the extraordinarily harsh twelve (12) level enhancement provided for in U.S.S.G. §3A1.4(a) and a the criminal history category of VI.

As set forth in the Factual Proffer, in-part the function of the Defendant in this criminal conduct was to assist unofficial ISIS media networks to increase the dissemination of pro-ISIS messages and propaganda. Specifically, the Defendant assisted in the production of Spanish-translated ISIS media and coordinated translations into various other languages, including English, French, German, and Indonesian. When the Defendant identified an ISIS sympathizer with foreign language ability, he would attempt to recruit and maintain communication with that person by creating new accounts for private discussions, or by requesting that the user create additional accounts to share with the Defendant. The Defendant would use virtual private networks ("VPN"s) and would access the internet through "TOR" in order to obfuscate his true location and other personally identifying information. Essentially, the Defendant took up ISIS' call for its supporters to provide services in online media operations on its behalf, and the Defendant provided such services to ISIS in that regard. The videos utilized by the Defendant were from stock video clips from a stock footage subscription service purchased by the Defendant. Additionally, some of the propaganda materials were translations of articles previously disseminated in English outlets years before the Defendant's conduct. However, in December of 2019 the Defendant did produce and coordinate the dissemination of an IMNI1 video which threatened and encouraged terrorist attacks in Madrid, Spain, on behalf of ISIS. Video analysis confirmed that certain audiovisual characteristics of that video matched those downloaded from a subscription service by the Defendant in 2019.

2

First, an overview of the requirements for the correct application of the "terrorism enhancement" pursuant to U.S.S.G. §3A1.4 is set forth below.  In that regard, the Defendant does not fulfill said requirements and the imposition of the "terrorism enhancement" would not be appropriate in this instance.

**A. *Distinguishing the terrorism enhancement from the elements of the underlying crime.***

The terrorism enhancement, U.S.S.G. § 3A1.4, imposes a significantly harsher punishment on those who commit certain types of crimes of terrorism. The enhancement increases a defendant's offense level to a minimum of 32 and designates a defendant's criminal history category as Category VI, regardless of whether the defendant has previously committed a crime. U.S.S.G. § 3A1.4. To trigger this enhancement, the government must prove elements *distinct from* those of the crime of conviction. Specifically, that the offense committed "involved, or was intended to promote, a federal crime of terrorism." *Id.*

The term "federal crime of terrorism" is defined as "an offense that is ... calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct," 18 U.S.C. § 2332b(g)(5)(A), and that "is a violation of" certain enumerated statutes, 18 U.S.C. § 2332b(g)(5)(B). Both parts of §2332b(g)(5) must be satisfied for the enhancement to apply. *See United States v. Tankersley*, 537 F.3d 1100, 1113 (9th Cir. 2008); *United States v. Parr*, 545 F.3d 491, 504 (7th Cir. 2008).

The material support statute, by contrast, requires proof that a defendant attempted to, conspired to, or did provide "material support or resources to a foreign terrorist organization," knowing "that the organization is a designated terrorist organization" or "that the organization has engaged or engages in terrorism." 18 U.S.C. § 2339B(a)(1).  It is possible for a defendant to provide material support to a terrorist group in violation of 18 U.S.C. § 2339B(a)(1) without

3

intending that the support or resources would influence, affect, or retaliate against government conduct to satisfy the first prong of the definition of federal crime of terrorism. *See, e.g.*, *United States v. Chandia* (*Chandia I*), 514 F.3d 365, 376 (4th Cir. 2008).

The enhancement, therefore, does not automatically apply to all material support offenses. Congress created this distinction in order to punish certain dangerous terrorists more severely than persons who committed non-violent crimes. *See Tankersley*, 537 F.3d at 1113. Thus, to warrant a substantial increase in punishment pursuant to the terrorism enhancement, a defendant must have the requisite intent necessary to satisfy the definition of federal crime of terrorism, beyond the intent required to establish a violation of the material support statute.

**B.** ***The terrorism enhancement requires examining the specific intent with respect to the offense of conviction.***

Circuits that have addressed the issue, hold that § 2332b(g)(5)(A) imposes a specific intent requirement. *See, e.g.*, *United States v. Hassan*, 742 F.3d 104, 148–49 (4th Cir. 2014); *United States v. Wright*, 747 F.3d 399, 408 (6th Cir. 2014); *United States v. Mohamed*, 757 F.3d 757, 760 (8th Cir. 2014); *United States v. Stewart*, 590 F.3d 93, 138 (2d Cir. 2009) ("[C]omission of a federal crime of terrorism ... incorporates a specific intent requirement.") (quoting *Chandia I*, 514 F.3d at 376.

In *United States v. Alhaggagi*, 978 F.3d 693 (9th Cir. 2020), the court agreed with this interpretation of § 2332b(g)(5) and the reasoning of its sister circuits in adopting it. As the Second Circuit explained, § 2332b(g)(5) "does not require proof of a defendant's particular motive," which is "concerned with the rationale for an actor's particular conduct." *United States v. Awan*, 607 F.3d 306, 317 (2d Cir. 2010). Rather, " '[c]alculation' is concerned with the object that the actor seeks to achieve through planning or contrivance." *Id.* The appropriate focus thus is not "on the defendant, but on his 'offense,' asking whether it was calculated, *i.e.*, planned—for whatever

4

reason or motive—to achieve the stated object." *Id.* In other words, 2332b(g)(5) "is better understood as imposing a requirement 'that the *underlying felony* [be] calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.' " *Id.* (quoting *Stewart*, 590 F.3d at 138).

 The analysis as to whether the terrorism enhancement applies requires an examination of the evidence to see if it supports a finding that a defendant's conduct meets the definition of federal crime of terrorism required for § 3A1.4 to apply.

**C**. *The terrorism enhancement does not apply in this case.*

It is clear that the crime of conviction would satisfy the <u>second prong</u> of the definition of federal crime of terrorism. The crime of conviction here—attempt to provide material support in violation of 18 U.S.C. § 2339B(a)(1)—is one of the enumerated statutes in 18 U.S.C. §2332b(g)(5)(B).

The remaining question is whether the Defendant's conduct satisfies the <u>first prong</u>: whether his attempt to provide material support to a terrorist organization by providing translation services, internet sites, and opening social media accounts, etc. was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A). It is the government's burden to prove that element by clear and convincing evidence, because application of the enhancement drastically increases the guidelines range. *See United States v. Jordan*, 256 F.3d 922, 926 (9th Cir. 2001).

Additionally, it would be erroneous to apply the terrorism enhancement by centering the analysis on the terrorist organization, rather than the Defendant's conduct or mental state. The enhancement specifically requires the district court to consider the latter, whereas the offense itself implicates the former.

**i**. *Calculated to influence or affect the conduct of government by intimidation or coercion.*

Without conceding such, the proposed factual proffer asserts that the Defendant coordinated and directed activities of certain media networks, focusing on producing Spanish-translated ISIS media as well as translations into various other languages. Additionally, that the Defendant used encrypted applications and virtual private networks to hide his personal information and location. It is asserted that when he identified an ISIS sympathizer with foreign language ability on the private network, he would attempt to maintain communication with that user by creating new accounts for private discussions. The Defendant recruited others to help translate and disseminate ISIS media. ISIS had called for its supporters to provide services in online media operations on its behalf, and the Defendant attempted to and did provide such services to ISIS.

The conduct of the Defendant was <u>not</u> calculated to influence or affect government conduct by intimidation or coercion just because he knew he was providing "support" to ISIS sympathizers and knew that ISIS is a terrorist organization.  It is simply wrong to conclude that since any support given to a terrorist organization ultimately inures to the benefit of its terrorist purposes, that this is sufficient to apply the terrorist enhancement. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 29, 130 S.Ct. 2705, 177 L.Ed.2d 355 (2010).  This reasoning, that since any support given to a terrorist organization ultimately inures to the benefit of its terrorist purposes, misses the mark in the context of the terrorism enhancement because it fails to properly differentiate between the intent required to sustain a material support conviction pursuant to 18 U.S.C. §2339B(a)(1) and the intent required to trigger the terrorism enhancement pursuant to U.S.S.G. §3A1.4.

As explained above, the material support statute requires only that the defendant have "knowledge of the foreign group's designation as a terrorist organization or the group's

commission of terrorist acts." *Id.* at 12, 130 S.Ct. 2705. Section 3A1.4, in contrast, requires the defendant's specific intent that the offense "influence or affect the conduct of government by intimidation or coercion." 18 U.S.C. § 2332b(g)(5)(A).

In cases involving violent acts of terrorism, specific intent is relatively easy to identify, either from the statements or admissions of the defendant or the nature of the offense.  But, where the conduct underlying the conviction does not involve violent terrorist acts, as is true in many material support cases, those "acts cannot, standing alone, support application of the terrorism enhancement." *Chandia I*, 514 F.3d at 376. In such cases, evidence beyond the facts underlying the offense conduct must reflect that the defendant had the enhancement's requisite intent.

The Second Circuit's decision in *United States v. Stewart* is instructive. 590 F.3d at 93. In *Stewart*, defendant Mohammed Yousry served as a translator between a convicted terrorist and his legal team. Some of these translated messages concerned the terrorist's support for the termination of a cease-fire and a return to violence between al-Gama'a, a terrorist organization in Egypt, and the Egyptian government. *Id.* at 103–07. Yousry was ultimately convicted of providing and concealing material support to that conspiracy in violation of 18 U.S.C. § 2339A. *Id.* at 108. The district court, however, did not apply the terrorism enhancement to Yousry's conviction, finding that "he did not act with the requisite state of mind." *Id.* at 136. On appeal, the Second Circuit agreed. *Id.* at 136–37. The court held that, despite Yousry's proximity to the messaging scheme and the scheme's role in benefiting al-Gama'a, the government failed to show that Yousry sought to influence or affect the conduct of government. *Id.* at 138.

Similarly, in the case-at-bar, the Defendant's actions—even though the media accounts inured to the benefit of ISIS and its terrorist purpose in the long run— the Defendant's actions are not accompanied by the necessary mental state to trigger the enhancement. A district court would

abuse its discretion if it were to conclude otherwise.

Further, the actions of the Defendant do not necessarily show that he understood the purpose of the internet accounts was to bolster support for ISIS's terrorist attacks on government entities.

Unlike conspiring to bomb a federal facility, planning to blow up electrical sites, attempting to bomb a bridge, or firebombing a courthouse—all of which have triggered the enhancement—opening a media account or internet network does not inherently or unequivocally constitute conduct motivated to "affect or influence" a "government by intimidation or coercion." 18 U.S.C. § 2332b(g)(5)(A).  In other words, one can open a media account for a terrorist organization without knowing how that account will be used; whereas it is difficult to imagine someone bombing a government building without knowing that bombing would influence or affect government conduct. The "cause and effect" reasoning dictates that translating or opening media accounts—and the effect—influencing government conduct by intimidation or coercion—are much too attenuated to warrant the automatic triggering of the enhancement.  Instead, to properly apply the enhancement, a court must determine that a defendant knew the media accounts were to be used to intimidate or coerce government conduct. *703 *See Awan*, 607 F.3d at 317–18; *Chandia I*, 514 F.3d at 376.

### ii. *Calculated to retaliate against government conduct.*

Further it cannot be shown that in translating and opening the media accounts, the Defendant had the specific intent to retaliate against government conduct.

Cases applying the retaliation prong rely on evidence that the defendant intended to respond to specific government action. For example, in *United States v. Van Haften*, the defendant, a registered sex offender, was apprehended while travelling to Turkey to try to join ISIS. 881 F.3d

543 (7th Cir. 2018). His Facebook posts and notes reflected his belief that the United States government had ruined his life by placing him on the sex offender registry. *Id.* at 544–45. The district court concluded that he "sought to join ISIS, at least in part, because he wanted to retaliate against the government for its treatment of Muslims in general and specifically for its treatment of [the defendant] as a designated sex offender." *Id.* at 544. *See also United States v. Salim*, 549 F.3d 67, 76–77 (2d Cir. 2008) (finding the retaliation prong satisfied where the defendant's attack "was in retaliation for judicial conduct denying [the d]efendant's applications or substitution of counsel"); *United States v. Abu Khatallah*, 314 F. Supp. 3d 179, 198 (D.D.C. 2018) (finding that the defendant "joined the attack [on the U.S. Special Mission in Benghazi] in order to retaliate against the U.S. government for its presence in Libya.").

In the case-at-bar, the Defendant's actions do not satisfy the retaliation prong. While providing support to terrorist groups inevitably strengthens their ability to retaliate against government conduct, it is not enough that such support will generally "lead[ ] to" more acts of terrorism. That reasoning does not distinguish between conduct that satisfies the material support statute and the specific intent required to establish calculated retaliation for purposes of the terrorism enhancement. The proper analysis is to look to whether the offense itself is "calculated ... to retaliate against government conduct." 18 U.S.C. §2332b(g)(5)(A).

In this case, it cannot be said that the Defendant committed the offense with the specific intent to retaliate against government conduct. Generally assisting a terrorist organization with media does not necessarily demonstrate an intention that the translations and media accounts are to be used to retaliate against a government, or sought revenge on any particular government or for any specific government conduct.

In the case-at-bar, the Defendant does not fulfill the requirements of the "terrorism enhancement" as discussed above, and the imposition of said enhancement would not be appropriate in this instance.

Stated again in a slightly different manner, please see the following:

• U.S.S.G. §3A1.4 entitled "Terrorism" provides,

(a) If the offense is a felony that involved, or was intended to promote, <u>a federal crime of terrorism</u>, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32.

(b) In each such case, the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI.

Application Note 1 then directs the reader to 18 U.S.C. § 2332b(g)(5) to determine the definition of a "federal crime of terrorism."

• 18 U.S.C. §2332b(g)(5) <u>defines</u> a "<u>federal crime of terrorism</u>," as
(5) the term "Federal crime of terrorism" means an offense that—

(A*) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct*; (<u>Emphasis supplied</u>.) **and**

(B) is a violation of—

(i) … 2339B (relating to providing material support to terrorist organizations) …

The § 3A1.4 terrorism enhancement applies "[i]f the offense is a felony that involved, or was intended to promote, a federal crime of terrorism." U.S.S.G. § 3A1.4(a). The term "federal crime of terrorism" as used in § 3A4.1 "has the meaning given that term in 18 U.S.C. § 2332b(g)(5)." *See* U.S.S.G. § 3A4.1 cmt. n.1. Under § 2332b(g)(5), an offense qualifies as a federal crime of terrorism if two distinct requirements are met: (1) the offense is a violation of one or more enumerated statutory provisions, **and** (2) *the offense "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."* (<u>Emphasis supplied</u>.) *See* § 2332b(g)(5)(A), (B). In order for the sentencing court to apply a terrorism enhancement, the government must show by a preponderance of the evidence that the

10

two requirements of § 2332b have been met. *United States v. Mandhai*, 375 F.3d 1243, 1247–48 (11th Cir. 2004) (citing *United States v. Graham*, 275 F.3d 490, 517 (6th Cir. 2001).

In the case-at-bar, the Defendant entered his plea of guilty to the offense of providing material support to a terrorist organization, in violation of 18 U.S.C. §2339B(a)(1), therefore 18 U.S.C. §2332b(g)(5)(**B**) is fulfilled.  However, it is clear that with regard to 18 U.S.C. §2332b(g)(5)(**A**), the definition of the term "Federal crime of terrorism" is *not* fulfilled.

Specifically, it cannot be said that the conduct of the Defendant was "*calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct*." The identification of a qualifying statutory provision alone does not constitute "identify[ing] a federal crime of terrorism," because a "[f]ederal crime of terrorism means an offense that" not only is a violation of one of the enumerated statutory provisions listed in § 2332b(g)(5)(B), but also "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." § 2332b(g)(5)(A), (B). "The definition is stated in the conjunctive, so both requirements must be met." (Emphasis supplied.) *Parr*, 545 F.3d at 504.

Courts have recognized that the structure of § 3A1.4 establishes two bases for applying the enhancement. *See Fidse I*, 778 F.3d at 481; *United States v. Arnaout*, 431 F.3d 994, 1001–03 (7th Cir. 2005); *United States v. Mandhai*, 375 F.3d 1243, 1247 (11th Cir. 2004); *United States v. Graham*, 275 F.3d 490, 517 (6th Cir. 2001). The first—if the offense "involved" a federal crime of terrorism—has been understood to apply when "a defendant's offense or relevant conduct *includes* a federal crime of terrorism." *Arnaout*, 431 F.3d at 1001 (emphasis added); *accord United States v. Parr*, 545 F.3d 491, 504 (7th Cir. 2008); *Mandhai*, 375 F.3d at 1247–48; *Graham*, 275 F.3d at 516. Thus, "an offense 'involves' a federal crime of terrorism only if the crime of conviction

is itself a federal crime of terrorism," (Emphasis supplied.) *Parr*, 545 F.3d 491 at 504, or if the "relevant conduct includes such a crime," *United States v. Awan*, 607 F.3d 306, 313–14 (2d Cir. 2010).

Alternatively, the enhancement applies "[i]f the offense ... was intended to promote a federal crime of terrorism." U.S.S.G. § 3A1.4(a); *accord Arnaout*, 431 F.3d at 1001. As the Sixth Circuit has explained, "[a] defendant who intends to promote a federal crime of terrorism has not necessarily completed, attempted, or conspired to commit the crime." *Graham*, 275 F.3d at 516. "[I]nstead the phrase implies that the defendant *has as one purpose* of his substantive count of conviction or his relevant conduct *the intent to promote a federal crime of terrorism*." *Id.* (Emphasis supplied.) In such cases, "the terrorism enhancement does not hinge upon a defendant's ability to carry out specific terrorist crimes or the degree of separation from their actual implementation. Rather, it is the defendant's *purpose* that is relevant, and if that *purpose* is to promote a terrorist crime, the enhancement is triggered." *Mandhai*, 375 F.3d at 1248 (Emphasis supplied.) *United States v. Fidse,* 862 F.3d 516 (5th Cir. 2017).

The phrase "calculated to influence or affect the conduct of government" has been interpreted as imposing a specific intent requirement. *See, e.g.*, *United States v. Hassan*, 742 F.3d 104, 148–49 (4th Cir. 2014); *United States v. Siddiqui*, 699 F.3d 690, 709 (2d Cir. 2012); *United States v. Chandia*, 395 F. App'x 53, 54, 60 (4th Cir. 2010); *United States v. Stewart*, 590 F.3d 93, 138 (2d Cir. 2009); see also *United States v. Christianson*, 586 F.3d 532, 539–40 (7th Cir. 2009) (noting that a court is to consider the defendant's "purpose" or "motive" in committing the offense. *A defendant has the requisite intent if he or she acted with the purpose of influencing or affecting government conduct and planned his or her actions with this objective in mind*. (Emphasis supplied.) *Siddiqui*, 699 F.3d at 709; *Stewart*, 590 F.3d at 137.

12

In other words, it cannot be shown that the Defendant had the <u>specific intent</u> to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct. The first part of the definition of federal crime of terrorism "focuses on the intended outcome of the defendants' unlawful acts-i.e., what the activity was calculated to accomplish, not what the defendants' claimed motivation behind it was." *United States v. Jayyousi,* 657 F.3d 1085, 1115 (11th Cir.2011) (citing *United States v. Mandhai,* 375 F.3d 1243, 1248 (11th Cir.2004) and *United States v. Awan,* 607 F.3d 306, 316–17 (2d Cir.2010) ["Here, whatever Awan's motive might have been in committing the crimes for which he was convicted, commission of crimes listed in § 2332b(g)(5)(B) satisfies the "involved" prong of the terrorism enhancement so long as the government shows by a preponderance of the evidence that Awan had the "specific intent," *Stewart,* 590 F.3d at 138, to commit an offense that was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A)."]

In *United States v. Chandia*, 514 F.3d 365 (4th Cir. 2008), the court declined to infer the required intent from the basic facts that gave rise to the conviction and stated that those facts do not support application of the enhancement, and that unlike in some cases where the enhancement has been applied, the acts underlying the conviction in this case were not violent terrorist acts. Therefore, these acts cannot, standing alone, support application of the terrorism enhancement. The court held that, "Because there has been no factual finding on the <u>intent element</u>, and because the basic facts supporting the conviction do not give rise to an automatic inference of the required intent, we must vacate Chandia's sentence and remand for resentencing."

In *United States v. Stewart,* 590 F.3d 93 (2nd Cir. 2009) the court stated, as the Fourth Circuit has recognized, commission of a federal crime of terrorism, which would trigger the

"involved" prong of the enhancement, incorporates "a specific intent requirement, namely, that the underlying felony was 'calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.' 18 U.S.C. § 2332b(g)(5)." *United States v. Chandia,* 514 F.3d 365, 376 (4th Cir.2008). So the problem for the government remains: there is no evidence that Yousry himself sought to influence or affect the conduct of a government. The enhancement therefore does not apply under the "involved" prong. *See Leahy,* 169 F.3d at 446.

Clearly, the Defendant's offense conduct was not an activity calculated to "influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." Again, the defendant does not dispute that he was charged with one of the enumerated offenses in 18 U.S.C. 2332b(g)(5)(**B**). Rather, he argues that the government cannot meet its burden of showing that he intended "to influence or affect the conduct of government" or "retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(**A**).

The Terrorism Enhancement, when applied, ―takes a wrecking ball to the initial Guidelines range. George D. Brown, *Punishing Terrorists: Congress, the Sentencing Commission, the Guidelines, and the Courts*, 23 Cornell J.L. & Pub. Pol'y 517, 520 (2014). As noted above, it functions by both increasing the offense level at least 12 levels and elevating the defendant to the highest Criminal History Category, irrespective of his or her actual criminal history. (It should be noted that in the case-at-bar the Defendant has zero criminal history points.)

If this Court finds that this enhancement applies to Mr. Blanco's offense, his sentencing range would skyrocket to 360 months imprisonment to Life, rather than 57 to 71 months imprisonment (a total offense level of 25 with a criminal history category of I). This is clearly "a draconian" enhancement. (―U.S.S.G. §3A1.4 is "draconian." James P. McLoughlin, Jr.,

*Deconstructing United States Sentencing Guidelines Section 3A1.4: Sentencing Failure in Cases of Financial Support for Foreign Terrorist Organizations*, 28 Law & Ineq. 51, 54 (2010)).

At this point, the Defendant will discuss the specific standard for application of the enhancement and show that the facts of this case do not meet that standard.

The applicable standard is set forth in *United States v. Awan*, 607 F.3d 306, 313 (2d Cir. 2010). There, the Second Circuit explained that the disjunctive phrase from U.S.S.G. § 3A1.4—if the offense involved, OR was intended to promote, a federal crime of terrorism——makes clear that the predicate offense must either (1) involve 'a federal crime of terrorism' or (2) be intended to promote 'a federal crime of terrorism,' and that each clause has a separate meaning. *Awan*, 607 F.3d at 313.  The court noted that a defendant's offense involves 'a federal crime of terrorism' when his offense includes such a crime, *i.e.*, the defendant committed, attempted, or conspired to commit a federal crime of terrorism as defined in 18 U.S.C. §2332b(g)(5), or his relevant conduct includes such a crime. *Id.* at 313-14.

Since Mr. Blanco's conviction is pursuant to 18 U.S.C. §2339B, which is a crime enumerated in §2332b(g)(5)(B), it is only necessary for the Court to find, under that prong, that the Defendant had the —specific intent to commit an offense that was — "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." *See id.* at 316-17. — "Calculation" is concerned with the object that the actor seeks to achieve through planning or contrivance . . . Section 2332b(g)(5)(A) does not focus on the defendant, but on his offense, 'asking whether it was calculated, *i.e.,*, planned—for whatever reason or motive—to achieve the stated objective.' *Id.* at 317.

Alternatively, — [t]he 'intended to promote' prong applies where the defendant's offense is intended to encourage, further, or bring about a federal crime of terrorism, even though the

15

defendant's own crime of conviction or relevant conduct may not include a federal crime of terrorism. *Id.* at 314. So, even if Mr. Blanco's offense was not —calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct, the terrorism enhancement may apply if, with his offense, he *intended to promote* another's commission of a crime in § 2332b(g)(5)(B) that was. *See id.* at 314-15. — [A]n offense is intended to promote 'a federal crime of terrorism' when the offense is intended to help bring about, encourage, or contribute to such a crime. *Id.* at 314.

Under both the — 'involves' or the — 'intended to promote' prong, then, the terrorism enhancement only applies if the Court finds that Mr. Blanco had some intent in addition to that which was necessary to support his guilty plea (only 'knowledge' is necessary for a conviction under 18 U.S.C. §2339B).

In this case, Mr. Blanco had neither the specific intent to commit a crime that was calculated to influence, affect, or retaliate against a government, nor did he have the intent to promote another's federal crime of terrorism when his guilty plea could rest only on his 'knowledge.'

Mr. Blanco's interest was in the production of translated ISIS propaganda materials and the dissemination thereof. However, even under the — 'involves' prong, it cannot be said that his intention was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." Simply put, his offense was not calculated to achieve that objective. *See Awan*, 607 F.3d at 314.

To fall within the — 'intended to promote' prong, the Defendant must have committed his offense with the intent to help bring about, encourage, or contribute to another person's commission of a federal crime of terrorism. Again, the Defendant did not *intend* anything more

16

than the production of translated ISIS propaganda materials and the dissemination thereof. Further, there is no evidence that Mr. Blanco intended to promote any plan by ISIS to commit a politically-motivated crime of terrorism.

Again, the key term, "a federal crime of terrorism," is defined to consist of two elements: (1) the commission of one of a list of specified felonies, which includes the material support offense at issue in this case, and (2) a specific intent requirement, namely, that the underlying felony was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5).

In this case it is clear that the Defendant did not have the specific intent to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct. Therefore, by definition, the Defendant's offense was not a felony that involved, or was intended to promote, "a federal crime of terrorism," and the twelve (12) level enhancement should not be applied in this instance, nor should he receive a category VI criminal history designation.

2.      **Objection to Paragraph 57**:  **"Adjusted Offense Level"**

The Defendant objects to Paragraph 57 of the PSI with regard to the assertion that the *adjusted offense level* should be 40.

Specifically, when the twelve (12) level enhancement pursuant to §3A1.4(a) is removed, the result would be an *adjusted offense level* of 28, rather than 40.

3.      **Application of Paragraphs 59 and 60: "Acceptance of Responsibility"**

The Defendant affirmatively states that the three (3) level reduction for acceptance of responsibility should be applied to the twenty (20) year statutory maximum sentence in the event that the twenty (20) year statutory maximum sentence becomes the guideline imprisonment term. See U.S.S.G. §5G1.1(A).

The total offense level presently calculated by the Presentence Investigation Report ("PSI") is 37, which with a criminal history category of VI renders a sentencing guidelines range of 360 months to Life imprisonment. PSI at ¶ 112.  Specifically, that paragraph provides, "Based upon a total offense level of 37 and a criminal history category of VI, the guideline imprisonment range is 360 months to life. However, the statutorily authorized maximum sentence of 20 years is less than the minimum of the applicable guideline range; therefore, the guideline term of imprisonment is 240 months, §5G1.1(a)."

As noted above, because the sentencing guideline range is higher than the statutorily authorized maximum term of 240 months under 18 U.S.C. §2339B(a)(1), the advisory sentence becomes 240 months under guidelines section 5G1.1(a).  The plea agreement provides that the Government would recommend a three-level reduction for acceptance of responsibility under USSG § 3E1.1(a) and (b), however in this case applying the reduction to the adjusted offense level of 40, resulting in a total offense level of 37 as calculated by the Probation Office, rather than the advisory guideline sentence under section 5G1.1 of 240-months, renders the reduction for acceptance effectively meaningless.

In *United States v. Rodriguez*, 64 F.3d 638 (11th Cir. 1995), the Eleventh Circuit recognized this inequity and found that "the [Sentencing] Commission failed to consider that §5G1.1 might operate to negate the §3E1.1 adjustment and undermine the 'legitimate social interests' served by the adjustment." *Rodriguez,* 64 F.3d at 643. In that case, due to the applicable drug quantity, the low end of Rodriguez' applicable guideline range, after being lowered for acceptance of responsibility was 135 months, which exceeded the statutory maximum sentence by 39 months. *Id.* at 640. Rodriguez argued to the district court that it should apply the three-level reduction for acceptance of responsibility to the section 5G1.1 guideline level. *Id.* at 640-41. The

18

district judge observed that not crediting a defendant's acceptance of responsibility in such a situation was the equivalent of "giving away snow in wintertime;" but he imposed the maximum sentence of 96 months in prison because he believed he lacked the authority to grant what was essentially a downward departure based on Rodriguez' acceptance of responsibility. *Id*. at 641.

On appeal, the Eleventh Circuit reversed and remanded the case for resentencing, finding that the district court erred in concluding that it did not have the authority to depart. The Eleventh Circuit held that a sentencing court may grant a downward departure for acceptance of responsibility from an advisory guideline sentence calculated in accordance with §5G1.1(a). *Id*. at 643. The court reasoned that a reduction in offense level under §3E1.1 "suggests that the Commission contemplated that a defendant would always receive some benefit at sentencing for accepting responsibility for his conduct." *Id*. (emphasis added).

Relying on *Rodriguez*, other district judges have departed downward in similar circumstances to effectuate a reduction for acceptance of responsibility.

This Court, in the case of *United States v. Evelio Suarez,* Case No. 18-CR-20669-RNS-1, where the Defendant pled guilty to conspiracy to commit money laundering in violation of 18 U.S.C. §1956(h), applied the three (3) level reduction for acceptance of responsibility to the lowest guideline range that encompassed the 240-month statutory maximum sentence within the applicable criminal history category of III in that case. (The undersigned counsel was also counsel for the defendant in the case of *United States v. Evelio Suarez* before this Honorable Court.)

Specifically, in the *Suarez* case the guideline provided that, "Based upon a total offense level of 39 and a criminal history category of III, the guideline imprisonment range is 324 to 405 months. Pursuant to §5G1.1(a), where the statutorily authorized maximum sentence is less than the minimum of the applicable range, the statutorily authorized maximum sentence shall be the

guideline sentence. Therefore, the guideline term of imprisonment is 240 months."

That is almost the identical situation as presented in the case-at-bar. The only difference is the criminal history category of VI in the case-at-bar vs. a criminal history category of III in the *Suarez* case, and a resulting guideline range of 360-months to Life in the case-at-bar vs. 324 to 405 months in the *Suarez* case. (It should be noted that the only reason the Defendant would be a criminal history category VI is due to the "Terrorism Enhancement" which is the subject of another objection to the PSI set forth herein, otherwise he would be a criminal history category I.)

Ironically, applying the three (3) level reduction for acceptance of responsibility to the lowest guideline range that encompassed the 240-month statutory maximum sentence results in the identical guideline range of 151-188 months in both cases as discussed below. (On December 19, 2019, this Court sentenced Mr. Suarez to 156-months.)

In *United States v. Corte*, Case No. 11-Cr-60123-Dimitrouleas (S.D. Fla. Sept. 9, 2011), the defendants who managed Scott Rothstein's law firm I.T. department requested the same departure. *Corte*, DE 43, 44. The Court granted the defendants a reduction for acceptance of responsibility from the advisory 60-month guideline sentence and imposed sentences of 37 months for the two defendants. Notably, each defendant had been held responsible for losses between $50 and $100 million. *Corte*, DE 19, 20, 55, 60.

Likewise, in *United States v. Gladstone*, Case No. 10-Cr-60195-Dimitrouleas (S.D. Fla. June 2, 2011), the Court granted a departure request in reliance on *Rodriguez*. *Gladstone*, DE 46, 51.

In the recent case of *United States v. Jose Luis De La Paz Roman* (Case No. 19-20004-CR-COOKE), the Court sentenced the defendant to 36 months, after apply the reduction for acceptance of responsibility to the maximum statutory sentence, as requested herein. (See D.E. 23 in that case.)

Additionally, in a securities fraud case, Judge Altonaga likewise granted a similar reduction for acceptance of responsibility. *United States v. Sanders*, No. 16-20572-Cr- Altonaga (S.D. Fla. Feb. 17, 2017) (DE 73, Sentencing Transcript, at p. 34). Other courts granted departures in analogous cases. *See United States v. Hayes*, 5 F.3d 292, 295 (7th Cir. 1993) (granting two-level substantial assistance departure using "the lowest offense level consistent with a 60-month sentence"); *United States v. Jones*, 233 F. Supp. 2d 1067, 1075 (E.D. Wis. 2002) (granting two-level downward departure for exceptional rehabilitative efforts from *"the lowest range that would support the statutory maximum sentence")*. (Emphasis supplied.)

In the case-at-bar, the advisory guideline sentence is 240 months under §5G1.1(a).  The lowest offense level correlating to 240 months with a criminal history category of VI is offense level 32 (a range of 210-262 months).  Applying the three-level reduction for Jonathan Guerra Blanco's acceptance of responsibility from the offense level consistent with a 240-month sentence results in an offense level of 29, thereby rendering a sentencing range of 151-188 months of imprisonment.

Therefore, the Defendant respectfully requests that this Honorable Court grant him the departure authorized by *Rodriguez*.  (Jonathan Guerra Blanco objects to the calculation of the acceptance of responsibility reduction in the PSI based on the argument set forth above to the extent an objection is necessary in this regard.)

Based on the foregoing, if the Court is inclined to overrule the Defendant's objection to the terrorist enhancement, it is submitted that the Court should apply the three (3) level reduction for acceptance of responsibility as discussed above to produce an effective guideline range of **151-188 months**, before any further variances deemed appropriate for this Defendant.

4.      **Objection to Paragraph 61**:  **"Total Offense Level"**

The Defendant objects to Paragraph 61 of the PSI with regard to the assertion that the *total offense level* should be 37.

Specifically, when the twelve (12) level enhancement pursuant to §3A1.4(a) is removed, and three (3) levels are deducted for acceptance of responsibility pursuant to U.S.S.G. §3E1.1(a) and (b), the result would be a *total offense level* of 25, rather than 37.

5.      **Objection to Paragraph 64**:  **"Criminal History Computation"**

The Defendant objects to Paragraph 64 of the PSI insofar as it states, "… However, because the offense involved or was intended to promote, a federal crime of terrorism, the criminal history category is VI, §3A1.4(b).

The Defendant herein relies upon and incorporates by reference his objection to paragraph 54 of the PSI as set forth above, and affirmatively asserts that inasmuch as he has zero criminal history points he should be designated as a Criminal History Category I, not VI.

6.      **Objection to Paragraph 112**: **"Sent. Options - Guideline Provisions"**

The Defendant objects to Paragraph 112 of the PSI inasmuch as it reads, "Based upon a total offense level of 37 and a criminal history category of VI, the guideline imprisonment range is 360 months to life. However, pursuant to §5G1.1(a), since the statutory maximum is 240 months, the guideline imprisonment term is 240 months."

It is submitted that the appropriate advisory guidelines sentence range should read as follows: Based on a total offense level of 25 and a criminal history category of I, the *advisory guideline imprisonment range* is **57 to 71 months**, before the application of any applicable downward departures and/or variances that this Honorable Court may deem appropriate.

22

**WHEREFORE**, the Defendant, **JONATHAN GUERRA BLANCO**, respectfully prays that this Honorable Court sustain the within objections to the Presentence Investigation Report and direct the United States Probation Office to amend the Presentence Investigation Report as requested herein.

Respectfully submitted,

Ana M. Davide, Esq.
Florida Bar No. 875996
ANA M. DAVIDE, P.A.
 420 South Dixie Highway, Suite 4B
Coral Gables, Florida 33146
Telephone: (305) 854-6100
Fax: (305) 854-6197
E-mail:  ana@anadavidelaw.com
(Counsel for Def., *Jonathan Guerra Blanco.*)

*/s/ Ana M. Davide*
Ana M. Davide, Esq.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 22nd day of April, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Ana M. Davide, Esq.
Florida Bar No. 875996
ANA M. DAVIDE, P.A.
 420 South Dixie Highway, Suite 4B
Coral Gables, Florida 33146
Telephone: (305) 854-6100
Fax: (305) 854-6197
E-mail:  ana@anadavidelaw.com
(Counsel for Def., *Jonathan Guerra Blanco.*)


*/s/ Ana M. Davide*
Ana M. Davide, Esq.


## SERVICE LIST

**United States of America v. Jonathan Guerra Blanco**
**Case No. 20-CR-20245-RNS-1**
**United States District Court, Southern District of Florida**

Karen E. Gilbert, A.U.S.A.
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
305-961-9161
Fax: 305-536-7213
Email: karen.gilbert@usdoj.gov

Nicole Grosnoff, A.U.S.A.
U.S. Attorney's Office
Southern District of Florida
99 N.E. 4th Street
Miami, FL 33132
(305) 961-9294
Email: nicole.s.grosnoff@usdoj.gov

Clara Lyons
U.S. Probation Officer
Wilkie D. Ferguson, Jr. United States Courthouse
400 North Miami Avenue, 9th Floor South
Miami, FL 33128
305-523-5374
Clara_Lyons@flsp.uscourts.gov