**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**UNITED STATES OF AMERICA**                                              CASE NO. 20-CR-20245-RNS-1

        **Plaintiff,**

vs.

**JONATHAN GUERRA BLANCO**

        **Defendant.**

_____/

**DEFENDANT, JONATHAN GUERRA BLANCO'S**
**EMERGENCY MOTION TO DIRECT THE FEDERAL BUREAU OF PRISONS (FDC MIAMI) TO PROVIDE LIFE-SAVING MEDICATION TO**
**THE DEFENDANT**

**COMES NOW** the Defendant, **JONATHAN GUERRA BLANCO**, by and through his undersigned counsel, and presents herewith, his Emergency Motion to Direct the Federal Bureau of Prisons (FDC Miami) to Provide Life-Saving Medication to the Defendant, and states as follows:

1. The Defendant is presently housed at FDC Miami awaiting his sentencing hearing which is scheduled for Friday, October 29th, 2021.

2. The Defendant suffers from life-threatening medical conditions. Paragraphs 80-96 of the Presentence Investigation Report disclosed March 10, 2021, documents the Defendant's very serious medical conditions. [D.E. 35]. Paragraph 95 notes that, "According to Sentry records, the defendant is classified as Care Level Care 3, unstable, complex chronic care as of September 15, 2020."

As noted in paragraphs 80-96 of the Presentence Investigation Report:

80. The defendant reported suffering from congenital heart disease, pulmonary hypertension, scoliosis and autism/Asperger's Syndrome. He reported taking numerous medications and being hospitalized on multiple occasions for various heart related surgeries since birth. Further, Guerra related he wore an orthopedic brace from the age of 10 through 19. The defendant, however, was

unable to recall certain details related to the afore-noted conditions and/or treatment. Guerra denied having any issues with COVID-19 and/or being exposed to COVID-19. It is noted that, during the pretrial services interview conducted shortly after the instant arrest, the defendant then reported he also has trouble walking or running due to his heart problems.

81. The defendant's mother verified Guerra's extensive medical history as follows: Mrs. Blanco noted she experienced a very delicate pregnancy with Guerra. She noted he was diagnosed with a "congenital malformation" at 52 days of birth, specifically Dextro-Transposition of the Great Arteries (TGA), ventricular septal defect (VSD) and pulmonary hypertension. The defendant was subsequently hospitalized, on an emergency basis, in the pediatric cardiac unit of William Soler Pediatric Teaching Hospital in Havana, Cuba, where he was in intensive care, and a cardiac balloon catheterization procedure was performed to facilitate oxygenation of the blood and "keep him alive." Thereafter, two days later, he experienced critical heart failure, which required another cardiac catheterization. During this time, Guerra was prescribed and treated with Digoxin and Captopril.

82. At six months of age, the defendant's mother noted Guerra underwent another cardiac catheterization procedure. Further, at nine months of age, he underwent open heart surgery in Cuba, by Dr. Eugenio Selman, who performed the Mustard/Senning procedure. The post-operative period was extremely complicated per the defendant's mother in that Guerra experienced arrythmias and respiratory failure (bronchomalacia). Consequently, this prolonged the intubation period for more than 21 days, required a tracheostomy, and the placement of a cannula for ventilation, which made the defendant dependent on a ventilator. Guerra then experienced bilateral diaphragmatic paralysis resulting in him having to undergo two operations (plications) to lower the diaphragm. As a result, the defendant was hospitalized for two years with arrhythmias, respiratory arrest and recurrent bronchospasms. The defendant's mother noted Guerra's diaphragm is paralyzed; and he has one lung that is smaller than the other.

83. According to the defendant's mother, the cannula was finally removed three years after the afore-noted surgery. However, the "hole" remained open until 2010, when a subsequent surgery was performed to "close the hole" by Dr. Moss, at a hospital in Punta Gorda, Florida. The defendant received physical therapy during his stay in the hospital and on an outpatient basis upon discharge. Mrs. Blanco verified Guerra learned to walk at the age of three; and, at the age of nine, he was diagnosed with Asperger's Syndrome (with sensory sensitivity) and scoliosis. The defendant's orthopedic surgeon, Dr. F. Brett Shannon, whose practice is in Fort Myers, recommended surgery to correct Guerra's spine. However, the defendant's mother disclosed Guerra's treatment for scoliosis ultimately was in the form of orthopedic braces as his cardiologist advised against surgery to correct the spine due to the risk associated with his cardiac condition.

84. Mrs. Blanco further noted Guerra's follow-up cardiac care was conducted by Dr. Carl Reed in Fort Myers; Dr. Levi Novero in Naples; and Dr. William Richardson at Lehigh Acres. Additionally, the defendant was referred by Dr. Novero to Dr. Mary Sokoloski and Dr. Sandhu, who practice at Holtz Children's Hospital in Miami, where he underwent a angiocardiography of the vena cava, an aortography, an arteriogram of the pulmonary arteries, a combined right and left heart angiocardiography, a combined right and left heart cardiac catheterization, and a coronary arteriogram using two catheters. These procedures were all done in 2013. Because of the

continuing presence of cardiac arrhythmias, Guerra underwent a cardioversion and TEE (transesophageal echocardiography) study in 2017, at Holtz Children's Hospital, by Dr. Sokoloski.

85. The defendant's mother advised that, while visiting Cuba in 2018, Guerra underwent emergency surgery for severe arrhythmias and a cardioversion was performed at the Instituto de Cardiologia Y Cirugia Cardiovascular (Institute of Cardiology and Cardiovascular Surgery) in Havana, by Dr. Ariel. Moreover, Dr. William Richardson referred the defendant to the specialists Dr. Kevin Lau and Dr. Harley, who practice at Tampa Hospital, and proceeded to schedule a procedure to treat his arrhythmias (which could lead to a stroke) on August 31, 2020. However, due to his anxiety and Asperger's syndrome, Guerra did not keep the scheduled appointment because of the hospital's restrictions imposed in response to the COVID-19 pandemic which limited entry into the facility and did not allow his parents to be present.

86. Mrs. Blanco further disclosed that, because of all the surgeries and procedures Guerra has endured throughout his lifetime, he has scars all over his body. Moreover, he has lost patches of hair on his scalp due to oxygen loss associated with his cardiac episodes. Consequently, the defendant's mother related Guerra was constantly bullied at school throughout his life.

87. Medical Records received from Dr. William Richardson (cardiology and vascular medicine) verified Guerra consulted with Dr. Richardson on January 16, 2020, as a new patient and reported a history of congenital heart disease. Further, his past medical history included "D transposition of the great arteries with ventricular sepal defect;" development of atrial fibrillation; prior history of atrial flutter postoperatively; moderate tricuspid regurgitation; paralysis of the diaphragm's status post Mustard procedure; bronchomalacia; and scoliosis following surgeries for congenital heart failure. His past procedural history includes Mustard procedure for D transposition of the great vessels; closure of VSD; operation for paralysis of the diaphragms; and tracheostomy with subsequent surgical closure of the tracheostomy. Guerra denied any history of acute congestive heart failure. It was noted Guerra apparently developed atrial flutter status post Mustard procedure and was placed on Sotalol, which had been tolerating well. Guerra's plan for care at the time included a review of his electrocardiogram (EKG); a Holter monitor; continue medical regimen with Sotalol and include enalapril; maintain a blood pressure log; and follow up in one month. It was noted that Guerra's EKG revealed atrial fibrillation with significant T-wave inversion over the lateral leads.

88. Guerra's follow-up with Dr. Richardson, on February 24, 2020, revealed the Holter monitor noted a heart rate of 73 bpm and a maximum of 118 bpm; and "underlying was a normal sinus rhythm." Further, there were "episodes of paroxysmal atrial fibrillation;" and no episodes of "supraventricular tachycardia episodes of ventricular tachycardia, high-grade A-V block or pauses." It was suggested that if Guerra developed increased palpitations or a fast-racing heart rate, that he undergo a monitor in the future. The following plan was recommended for Guerra: continue Sotalol (80 mg) four times daily; continue enalapril (10 mg) twice daily; monitor and document heart rate and blood pressure; and follow up in three months. The defendant's impression included "development of systemic ventricular depressed left ventricular ejection fraction; history of atrial flutter;" and he was at the time "presently in atrial fibrillation."

89. A subsequent follow up with Dr. Richardson on May 12, 2020, revealed Guerra developed mitral regurgitation and moderate tricuspid regurgitation. It was noted Guerra had previously undergone an electrical cardioversion and he successfully converted to normal sinus rhythm. Further, Guerra "reverted back to atrial fibrillation" and only felt palpitations when anxious. The defendant's recommended plan included a review of his EKG; continued medication as previously noted; and tracking heart rate and blood pressure. It was also suggested that an echocardiogram be repeated; an event monitor; and the possibility of a pulmonary vein isolation was discussed. Guerra was advised to follow up in three months.

90. A follow up with Dr. Richardson on July 14, 2020, revealed an echocardiographic imaging conducted in May of 2020 noted the defendant had a left ventricular ejection fraction of 45 to 50%; and "septal flattening in diastole and systole consistent with right ventricular pressure and/or volume overload." His left atrium was congenitally small. Further, there was "severe right ventricular enlargement again the right ventricular systolic function as severely impaired;" moderate right atrial enlargement; severe tricuspid regurgitation; and severe pulmonary hypertension. Guerra was referred to an adult congenital heart specialist and a pulmonary hypertension specialist. It was noted the defendant and his family were advised of the severity of his pulmonary hypertension; he was advised he might require a defibrillator in the future; and he may also need to consult with an electrophysiologist. No other medical records or follow up visits were noted by Dr. Richardson.

91. Medical records received from Dr. F. Brett Shannon, via Pediatric Orthopedics of Southwest Florida, verified Guerra was a patient, under their care for thoracogenic scoliosis, from September 9, 2010 through November 14, 2014. During his initial consultation, the defendant was found to have a moderate to severe right thoracic prominence and a mild left lumbar prominence. X-rays revealed a 47-degree right thoracic scoliosis. The defendant at the time was wearing a brace and the family opted to continue brace wearing. It was noted that surgical intervention may be required. During follow-up consultations no unusual problems were noted and continued brace use was recommended. During his final consultation on November 14, 2014, a physical examination revealed asymmetry to the chest wall and a moderate right thoracic prominence was noted. An x-ray revealed a 47-degree right thoracic scoliosis, which was noted as unchanged from previous examinations. At that time, observation was the plan noted. The defendant reported no significant symptoms of pain. The doctor and defendant's family discussed the "natural history of scoliosis in the occasional need for surgical intervention as an adult to the pediatric signs of pulmonary compromise." A follow-up with an orthopedic surgery clinic in one year was recommended.

92. Medical records received from Jackson Health Systems verified Guerra was admitted into their Holtz Children's Facility on June 8, 2017. The attending physician is noted as Mary C. Sokoloski, a pediatric cardiologist. The hospital course included the defendant presenting with a "history of d tga status post mustard presenting with artria flutter." He was admitted for adjustment of his "sotalol dosing, TEE and cardioversion." The TEE and cardioversion were previously done successfully and remained stable. Guerra was started on anti-coagulation medication Xarelto and monitored accordingly. The defendant was noted as not having any complications from the procedure, his dose of sotalol was adjusted until it reached "60 mg BID." On June 11, 2017, Guerra was discharged in stable condition.

93. A response received from Bayfront Health Punta Gorda, located in Punta Gorda, Florida verified the defendant was admitted to their facility on April 16, 2010, and discharged on the same date. This facility, however, was unable to provide any further medical documentation for the services rendered as "records have reached their retention period and are no longer in storage."

94. A response received from Jackson Memorial Hospital, in Miami, verified it has no discharge summary records for the defendant maintained by their facility for Dr. Satinder K. Sandhu.

95. The probation officer notes that medical records have also been requested of the FDC Medical Department, as well as the remaining physicians and hospitals/medical facilities provided by the defendant's mother as noted above and responses remain pending. According to Sentry records, the defendant is classified as Care Level Care3, unstable, complex chronic care as of September 15, 2020. Further, he was COVID-19 quarantined from September 14, 2020 through October 22, 2020.

96. Medical documentation received from defense counsel further verified that, in August of 2020, Guerra consulted with various pediatric cardiologist professionals affiliated the Pediatric Cardiology Associates medical practice located in St. Petersburg and Tampa, Florida, on multiple occasions. Guerra's diagnoses include "D-TGA (transposition of great vessels; atrial fibrillation; atrial flutter; nonrheumatic tricuspid (valve) insufficiency; heart failure, unspecified; paroxysmal; atrial fibrillation; and paroxysmal atrial fibrillation. His medical regimen includes Xarelto (20 mg/once daily); enalapril maleate (10 mg/one tablet twice daily); sotalol (80 mg/frequency unspecified); and aspirin (one daily). Guerra is noted as being allergic to "Pencillins" and erythromycin base. The defendant's referring physician is noted as Dr. Dolores Delgado. His plan of care included follow-up consultations with the last consult scheduled on November 18, 2020. As Guerra was arrest on September 11, 2020, he failed to report to this appointment.

3. It is absolutely necessary that he take the prescribed medication (Sotalol) on-timeto keep these medical conditions under control and somewhat in abeyance, however the last of this medication he has is for today's dose, Tuesday, September 7th. He takes that medication four times and will have none for this Tuesday afternoon, September 7th. In other words, he will run out of his needed medication. The proper requests that this medication be resupplied to him have been made, however to no avail thus far. Without his medication, he is at great risk of having a heart attack, stroke, or even worse. The Defendant's situation is critical at this time if hedoes not take his medication.

4. 4. The personnel at FDC Miami have been advised of the need for this medication and have not responded.

5. Therefore, it is imperative that this Honorable Court direct FDC Miami to provide the necessary medication, so that there will be no gap in the effectiveness of his medication.

6. In accordance with SDFL Local Rule 88.9, the undersigned counsel has been in contact with Karen E. Gilbert, the Assistant United States Attorney assigned to this case, however the position of the Government with regard to this motion is unclear at this time.

7. The within Emergency Motion to Direct the Federal Bureau of Prisons (FDC Miami) to Provide Life-Saving Medication to the Defendant is filed in the utmost of good faith and in the interest of justice and is not the result of a lack of due diligence.

**WHEREFORE**, Defendant, **JONATHAN GUERRA BLANCO,** respectfully prays that this Honorable Court enter its order granting the within Emergency Motion to Direct the Federal Bureau of Prisons (FDC Miami) to Provide Life-Saving Medication to the Defendant.

Respectfully submitted,

ANA M. DAVIDE
 (Florida Bar No. 875996)
 ANA M. DAVIDE, P.A.
420 South Dixie Highway, Suite 4B
Coral Gables, Florida 33146
Telephone: (305)854-6100
Fax: (305) 854-6197
E-mail: ana@anadavidelaw.com
(Counsel for Def., *Jonathan Guerra Blanco*.)

*/s/ Ana M. Davide*
Ana M. Davide, Esq.

**COUNSEL'S CERTIFICATION OF EMERGENCY**

After reviewing the facts and researching applicable legal principles, I certify that this motion in fact presents a true emergency (as opposed to a matter that may need only expedited treatment) and requires an immediate ruling because the Court would not be able to provide meaningful relief to a critical, non-routine issue after the expiration of seven days. I understand that unwarranted

certification may lead to sanctions.

This certification is based on the dire consequences that may befall the Defendant if the relief is not granted on an emergency basis.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 7th day of September 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                              ANA M. DAVIDE
                                                              (Florida Bar No. 875996)
                                                              ANA M. DAVIDE, P.A.
                                                          420 South Dixie Highway, Suite 4B
                                                          Coral Gables, Florida 33146
                                                          Telephone: (305)854-6100
                                                          Fax: (305) 854-6197
                                                          E-mail: ana@anadavidelaw.com
                                                          (Counsel for Def., *Jonathan Guerra Blanco*.)

                                                          ***/s/ Ana M. Davide***
                                                               Ana M. Davide, Esq.

## SERVICE LIST

**United States of America v. Jonathan Guerra Blanco**
**Case No. 20-CR-20245-RNS-1**
**United States District Court, Southern District of Florida**

Karen E. Gilbert, A.U.S.A.
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
305-961-9161
Fax: 305-536-7213
Email: karen.gilbert@usdoj.gov

Nicole Grosnoff, A.U.S.A.
U.S. Attorney's Office
Southern District of Florida
99 N.E. 4th Street
Miami, FL 33132
(305) 961-9294
Email: nicole.s.grosnoff@usdoj.gov