UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-20245-CR-SCOLA

UNITED STATES OF AMERICA

v.

JONATHAN GUERRA BLANCO,
                Defendant.   /
_____

**GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PSI**

      The United States, by and through the undersigned Assistant United States Attorney, hereby files this response to defendant Guerra Blanco's objections to the Presentence Investigation Report (PSI) (DE 35), and states as follows:

*Summary of the Argument*

      This Court should apply the terrorism enhancement and sentence this defendant to twenty years (240 months) imprisonment. The defendant plead guilty to a one Count Information, which charged him with attempting to provide material support to a designated foreign terrorist organization, namely ISIS, in violation of Title 18, United States Code, Section 2339B. Although the advisory guideline range for this conviction is 360 months to life imprisonment, 240 months is the statutory maximum for this offense. In their alternative position, the defendant requests that if the court applies the terrorism enhancement, that he be sentenced below the statutory maximum to provide him a benefit for accepting responsibility. Because this request is actually a motion for a downward departure from the advisory guidelines, and not an objection to the PSI, the undersigned will address that issue separately, at the end of this pleading in the section discussing the Title 18, United States Code, Section 3553 factors.

### I. *PSI-Calculation of Advisory Guideline Range*

In Paragraph 52 of the PSI, it was determined that pursuant to USSG § 2M5.3, the Base Offense Level was 26. Because this offense involved or was intended to promote a federal crime of terrorism, 12 levels were added (PSI, ¶ 54). Additionally, the defendant received a two-level enhancement for his role in the offense (PSI, ¶ 55). Thus, resulting in an Adjusted Offense Level of 40. After acceptance of responsibility, the level was reduced to 37. Because of the applicability of the terrorism enhancement, (PSI, ¶ 64, 112), Guerra Blanco has a criminal history category of VI. This resulted in an advisory guideline range of 360 months to life imprisonment. However, because the statutory maximum sentence is 20 years, the guideline term of imprisonment is 240 months. (PSI, ¶ 112).

### II. *Offense Conduct*

The offense conduct section of the PSI, paragraphs 13-47, detailed the significance and seriousness of this offense. The agreed upon facts in support of the plea also detail the criminal conduct (DE 27). Simply stated, the defendant produced for dissemination videos on behalf of ISIS calling for violent jihad, in various foreign languages. Very significantly, the defendant's conduct expanded the reach of ISIS violence to the entire Spanish-speaking world.

The purpose of disseminating these violent videos was to further the influence and promote the message of ISIS. Because the defendant posted these videos to the world wide web/internet, we have no idea if his message has already been followed, or importantly, whether these motivational and instructional media will be used in the future. Unfortunately, these dangerous videos can never be removed from the internet.

In the agreed upon Factual Basis (DE 27), just to highlight a few of defendant's actions, defendant admitted to the following significant facts:

ISIS has equated the value of propaganda work on its behalf to the value of ISIS soldiers waging violence. ISIS has called for people to contribute their social media services to its cause to invigorate its terrorists.
DE 27, page 1.

………..

Due to ISIS's territorial and key personnel losses, official ISIS media publications have waned and the organization has become more reliant on its worldwide supporters. As a result, unofficial ISIS media networks have emerged, and function as a decentralized network to increase the dissemination of pro-ISIS messages and propaganda. Since 2019, groups such as ISIS Media [Muntasir Media] Network 1 ("IMNl ") and ISIS Media [Andalucia Publications] Network 2 ("IMN2") have fulfilled this role, operating on SMPl [Social Media Platform 1-Telegram] and other encrypted platforms to produce and spread ISIS videos, instructional guides, graphics, and related media which incite and equip primarily Spanish-speaking followers to conduct operational attacks in support of ISIS. **GUERRA** directed and coordinated the efforts of IMNI and IMN2. While IMNl and IMN2 focus on producing Spanish-translated ISIS media, they also coordinated translations into various other languages, including English, French, German, and Indonesian.
DE 27, page 2.

…………..

In a conversation, with OCE2 on or about 18 April 2020, **GUERRA** stated"[w]ithout us the IS [Islamic State] in the online world is dead." This quote is an example of the available evidence showing that **GUERRA** took up ISIS' call for its supporters to provide services in online media operations on its behalf, and that **GUERRA** attempted to provide services to ISIS.
DE 27, page 3.

…………

On or about 10 February 2020, **GUERRA** posted to the IMNl SMPl group a document titled "Open Source Jihad 2 -[IMNl]- La mas poderosa maquina de chapear - Consejos para nuestr@s herman@s ... ," which translates in salient part to "The Ultimate Mowing Machine." The document provided Spanish-translated encouragements and instructions on how to effectively conduct a vehicle attack against pedestrian targets. While the English-language version of the document was previously released in a 2010 publication of AQAPs Inspire Magazine, **GUERRA's** IMNl-branded version provided a Spanish language translation for broader dissemination featured original content which included instructions for the use of VPNs, multi-layered encryption applications, and other sophisticated tradecraft to avoid detection by authorities.
DE 27, pages 4-5.

3

……..

On or about 20 December 2019, **GUERRA** produced and coordinated the dissemination of an IMNI1 video which threatened and encouraged terrorist attacks in Madrid, Spain, on behalf of ISIS. The video, which was widely reported by Spanish news outlets, included video footage of Christmas celebrations at a landmark public square in Madrid. The video featured narration and subtitles which stated, among other things, "don't let them celebrate in peace," and "kill them, give them jihad!" As a result of the video's release, a planned concert of Venezuelan musicians at the public square was cancelled, citing the terrorist threat. Video analysis confirmed that certain audiovisual characteristics of the IMNI1 video matched those downloaded from a subscription service by **GUERRA** in 2019.
DE 27, page 6.

These above five separate acts conducted by the defendant show that his criminal conduct was not a single occasion or even a limited amount, it went on for at least one year. The defendant played a significant role in the production and dissemination of ISIS violent propaganda.

The seriousness of this offense and the conduct of the defendant justify the application of the terrorism enhancement.

### III. *Terrorism Enhancement*

*Application of Guideline Section 3A1.4 (Terrorism Enhancement) to Defendant's Criminal Actions in this Case is Appropriate*

Defendant's objections to the "terrorism enhancement" are meritless. The terrorism enhancement, U.S.S.G. § 3A1.14, provides as follows:

(a) If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32.

(b) In each such case, the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI.
**U.S.S.G. § 3A1.4.**

Application Note 1 to that guideline further provides that a "federal crime of terrorism" is defined by the "meaning given that term in 18 U.S.C. § 2332b(g)(5). That statute in turn provides a two-part definition. First, a federal crime of terrorism is "an offense that is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A). Second, the offense must be a violation of a specific federal criminal statute listed in 18 U.S.C. § 2332b(g)(5)(B). That list explicitly includes, among other things, the material support statute, 18 U.S.C. § 2339B, the statute to which the defendant here pled guilty. Accordingly, reading the guideline and the definitional statute together, the terrorism enhancement is applicable in this case if the offense "**involved, or was intended to promote**… an offense that is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." U.S.S.G. § 3A1.4; 18 U.S.C. § 2332b(g)(5)(A). (emphasis added).

The enhancement reflects the fact that persons who support terrorism, or align themselves with terrorists, represent a unique danger to the community, and are less likely than others to be rehabilitated. *See United States v. Meskini*, 319 F.3d 88, 92 (2nd Cir. 2003) (noting that "terrorism represents a particularly grave threat because of the dangerousness of the crime and the difficulty of deterring and rehabilitating the criminal, and thus . . . terrorists and their supporters should be incapacitated for a longer period of time").

Accordingly, to apply the enhancement in USSG § 3A1.4, the Court must make a legal as well as a factual determination. The Court must first determine, as a matter of law, whether the offense of conviction implicates one of the specified federal statutes that could give rise to a "federal crime of terrorism." This requirement may be met in one of two ways: either (1) the

offense of conviction is actually among the statutes listed in 18 U.S.C. § 2332b(g)(5), or (2) the offense otherwise involved, or was intended to promote, a violation of one of those statutes.

In the second stage of the analysis, the Court must determine whether the offense is a federal crime of terrorism because it was "calculated to influence or affect the conduct of the government by intimidation or coercion, or to retaliate against government conduct." The government must prove these facts by a preponderance of the evidence. *United States v Cataldo* 171 F.3d 1316, 1321 (11th Cir. 1999). There can be no meaningful dispute that these requirements are met here.

First, because defendant stands convicted of 18 U.S.C. § 2339B, an offense specifically listed 18 U.S.C. 2332(g)(5), it clearly qualifies as a federal crime of terrorism. The remaining issue, therefore, is whether the defendant's conduct was "calculated to influence or affect the conduct of the government by intimidation or coercion, or to retaliate against government conduct."

The agreed upon facts clearly demonstrate that the defendant's conduct was calculated to influence or affect the conduct of the government by intimidation or coercion, or to retaliate against government conduct. Defendant produced for dissemination videos on behalf of ISIS calling for violent jihad. One instance of his conduct actually caused the cancelation of a public event due to defendant's threat of violence.

### IV. *United States v. Arcila Ramirez*

In November 2021, just two months ago, the Eleventh Circuit issued an opinion addressing the application of the terrorism enhancement. *United States v. Arcila Ramirez,* 16 F. 4th 844 (11th Cir. 2021). In *Arcila Ramirez*, a case prosecuted in the Southern District of Florida, the defendant was convicted of providing material support to a terrorist organization, namely the ELN in

Colombia, in violation of Title 18, United States Code, Section 2339B(a)(1), and sentenced by Judge Martinez to twenty years' imprisonment. Arcila Ramirez was represented by the same defense counsel as in the present case.

Specifically, the charge to which he plead guilty to, was knowingly providing material support, including property, weapons, firearms, firearm parts and components, and services, to the ELN, while knowing that the ELN was a designated foreign terrorist organization and that the ELN engages in and had engaged in terrorist activity and terrorism.

This is the same statute of conviction for Guerra Blanco. In Guerra Blanco's factual proffer, he admitted that he knew that ISIS was a designated foreign terrorist organization, that ISIS engages and has engaged in terrorist activity and that the ISIS engages and has engaged in terrorism (DE 27).

In summary, Arcila Ramirez admitted that he utilized straw purchasers to obtain weapons that he thereafter sold to the designated terrorist organization. Arcila Ramirez knowingly sold six AK-style firearms to the ELN. *Id.* at 848. Arcila Ramirez agreed to the government's factual proffer, which stipulated, *inter alia*, that: (1) from August 2018 to January 2019, Arcila Ramirez knowingly provided material support to the ELN, knowing that the ELN engaged in, or engages in, terrorist activity or terrorism; (2) on August 31, 2018, Arcila Ramirez flew to Colombia to negotiate the sale of six AK-style firearms with a conspirator he knew at that time "was a weapons broker for the ELN and other criminal and paramilitary groups"; and (3) at their September 5, 2018 meeting, Arcila Ramirez agreed to sell the six firearms to the conspirator "for the ELN" and to selling him additional firearms in the future. *Id*.

At the time of sentencing, because the PSI determined that the terrorism enhancement was appropriate, Arcila Ramirez' total offense level was 39 and he had a criminal history category of VI. This yielded an advisory guideline range of 360 months to life imprisonment.

This guideline range is the same as in the instant case. However, the Guerra Blanco total offense level is 37, as there was no two-level enhancement for firearms, as there was in Arcila Ramirez. In both cases, the statutory maximum for the offense of conviction is 20 years imprisonment.

Arcila Ramirez made the same objections to the PSI as Guerra Blanco has in the instant case.

Arcila Ramirez argued U.S.S.G. § 3A1.4 required that the government prove not only his material support to the ELN, a known terrorist organization, but also that his offense conduct was "calculated" to influence, affect, or retaliate against the Colombian government. In addition to terrorism, the ELN engages in general criminal activity, such as drug trafficking and kidnapping. Defense counsel argued that, even if a jury found Arcila Ramirez guilty of the § 2339B(a)(1) material support offense, the district court would still have to find that Arcila Ramirez had the specific intent required for the enhancement, i.e., that his offense was "calculated" to influence or affect government conduct. Defense counsel emphasized that the terrorism enhancement was concerned about what Arcila Ramirez intended, not what the terrorist organization did. Arcila Ramirez claimed his motive was to profit financially, not to retaliate against the Colombian government. *Id*. at 849.

After review of the entire record, the Eleventh Circuit vacated Arcila Ramirez' sentence and remanded the matter back to Judge Martinez for re-sentencing. The Court held that with no "calculated" or specific intent finding at all, the district court erred in applying § 3A1.4's terrorism

enhancement. The Court did not express an opinion as to whether the factual proffer and any other record evidence were sufficient for the district court to draw any particular inferences. Rather, the error is that the district court made no fact findings at all. *Id*. at 855.

Even though the Court vacated and remanded in the Arcila Ramirez case, the Court's opinion is instructive in what facts must be present, and what findings must be made by the Court, in order to apply the terrorism enhancement. The Court's opinion outlines "step by step" the proper analysis that must be conducted at sentencing and what factual findings must be made by the sentencing court.

*Section 3A1.4(a)*

Section 3A1.4(a) provides that the terrorism enhancement applies if the defendant's "offense is a felony that involved, or was intended to promote, a federal crime of terrorism." U.S.S.G. § 3A1.4(a). The structure of § 3A1.4 establishes two separate bases for applying the enhancement: (1) when the defendant's offense "involved" a federal terrorism crime; or alternatively, (2) when his offense was "intended to promote" a federal terrorism crime. *Id.* at __.

*Involved*

The Eleventh Circuit Court already has concluded that the term "involved" in this guideline "means to 'include.'" *United States v. Mandhai*, 375 F.3d 1243, 1247-48 (11th Cir. 2004) (*citing United States v. Graham*, 275 F.3d 490, 516 (6th Cir. 2001)); *see also United States v. Arnaout*, 431 F.3d 994, 1001 (7th Cir. 2005) ("The ordinary and plain meaning of 'involved' means 'to include.'") (citing Random House Webster's College Dictionary 1042 (2d ed. 1997)). As the Fifth Circuit explained, an offense "involved" a federal crime of terrorism if the crime of conviction itself is a federal crime of terrorism or if the relevant conduct includes such a crime. *Citing United States v. Fidse*, 862 F.3d 516, 522 (5th Cir. 2017).

Although Arcila Ramirez only dealt with the first prong, in the instant case, we can proceed under either "involved" or "intended to promote" theories.

*Federal Crime of Terrorism" Defined in § 2332b(g)(5)*

As to the other key term, the application notes to § 3A1.4(a) state that "[f]or purposes of this guideline, 'federal crime of terrorism' has the meaning given that term in 18 U.S.C. § 2332b(g)(5)." U.S.S.G. § 3A1.4 cmt. n.1. In turn, the § 2332b(g)(5) statute provides that a "[f]ederal crime of terrorism" means "an offense that":

(1) "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct," and

(2) "is a violation of" one of the criminal statutes listed in § 2332b(g)(5)(B).

18 U.S.C. § 2332b(g)(5)(A)-(B). This definition is written in the conjunctive, and both prongs must be satisfied. *Fidse*, 862 F.3d at 524 & n.6; *Graham*, 275 F.3d at 514.

Arcila Ramirez's statute of conviction, 18 U.S.C. § 2339B, is one of the listed statutes. So, under the "involved" prong of U.S.S.G. § 3A1.4, the issue becomes whether Arcila Ramirez's offense or relevant conduct was "calculated" to influence, affect, or retaliate against government conduct. *Arcila Ramirez*, at 849-850.

Like Arcila Ramirez, Guerra Blanco was convicted of 18 U.S.C. § 2339B, thus, part two of this requirement is satisfied.

*Eleventh Circuit Precedent*

Previously, the Eleventh Circuit has affirmed the application of U.S.S.G. § 3A1.4(a) terrorism enhancements in two decisions. *See United States v. Mandhai*, 375 F.3d 1243 (11th Cir. 2004); *United States v. Jayyousi*, 657 F.3d 1085 (11th Cir. 2011).

*Calculated*

To be sure, whether a defendant's offense is calculated (i.e., intended) to influence, affect, or retaliate against government conduct is a highly fact specific inquiry that requires examining the record as a whole. Sometimes, as in *Jayyousi* and *Mandhai*, the record will contain statements by the defendant expressing an intent to influence, affect, or retaliate against government conduct. *See Jayyousi*, 657 F.3d at 1115; *Mandhai*, 375 F.3d at 1246. However, because a defendant often will not admit his full knowledge or intentions, the district court may find the requisite calculation or intent existed based on circumstantial evidence and reasonable inferences drawn from the facts. As the Second Circuit emphasized, a defendant's knowledge that a terrorist organization solicited his actions to attack the government could demonstrate that a defendant's crimes were calculated to influence government conduct, even if the defendant was not personally motivated by the organization's object. *See Awan,* 607 F.3d at 317-18. Personal motive is not relevant. *Jayyousi*, 657 F.3d at 1115; *Awan*, 607 F.3d at 317.

Various courts, including the Eleventh Circuit, have held that a defendant's motivation to commit the crime is not relevant to whether it was "calculated to influence, affect, or retaliate against a government." *See United States v. Jayyousi*, 657 F.3d 1085, 1115 (11th Cir. 2011); ("Defendant's motive 'is simply not relevant.'") *See also United States v. Mohamed*, 757 F.3d 757, 760 (8th Cir. 2014); *United States v. El-Mezain*, 664 F.3d 467, 571 (5th Cir. 2011)..

The Second Circuit has directly addressed the contours of the applicability of U.S.S.G. § 3A1.4 in the case of *United States v. Awan*, 607 F.3d 306 (2nd Cir.), *cert. denied*, 562 U.S. 1170 (2010). Awan sent money from the United States to the Khalistan Commando Force (KCF), a Sikh terrorist organization responsible for carrying out murders and bombings in India. *Id.* at 310-11. He also attempted to recruit an associate to travel to Pakistan to receive explosives training for the

11

KCF. *Id.* He was thereafter convicted of providing material support to terrorists, conspiracy to do the same, and money laundering. At his sentencing, the District Court declined to apply U.S.S.G. § 3A1.4, reasoning that "it is speculative to conclude that the defendant had any particular motive in mind, and in particular, that he was motivated by a desire to influence the policies of the Indian government or retaliate for some unspecified wrong." *Id.* at 316. The Second Circuit reversed, finding that the District Court committed procedural error. The Second Circuit reasoned that while the defendant may well have been motivated by non-political reasons, such as a desire for personal prestige obtained by associating with well-known Sikh terrorists, the government could still prove that the defendant's offenses themselves were "calculated to influence ... the conduct of government ..." even if he lacked a specific political motive for committing them. *Id.* at 317. As the Court observed: "A hired assassin who kills a political leader at the behest of a terrorist organization can hardly disclaim that his crime was calculated to influence the conduct of government simply because he was motivated by greed rather than politics." *Id.* at 318. In short, as the Second Circuit noted, the defendant's actual motive "is simply not relevant." *Id.* What matters is whether the offense itself was calculated to influence or affect the conduct of government.

Applying *Awan* to the facts here, it is plain that the terrorism enhancement applies.

In addition, the Fourth Circuit has similarly held that the government may prove the requisite intent with evidence that the defendant provided (or, here, attempted to provide) material support to the foreign terrorist organization with the awareness that the terrorist organization has as its goal coercing government conduct; and that this evidence establishes that—because the defendant was aware of this goal—his provision of material support to the terrorist group was intended to advance it. *United States v. Elshinawy*, 781 F. App'x 168, 174 (4th Cir. 2019) (citing

*United States v. Chandia*, 675 F.3d 329, 340-41 (4th Cir. 2012)). The *Elshinawy* Court likewise found that the terrorism enhancement applied. According to the Fourth Circuit, the district court properly found that Elshinawy possessed the necessary intent. First, Elshinawy evidently knew ISIS's purpose was to coerce and retaliate against government conduct. Second—and more importantly—Elshinawy wholeheartedly supported these goals in both word and deed. *Id*. at 174.

### V. *Argument*

In the objections to the PSI, defendant makes one basic claim: that based on these facts, the terrorism enhancement should not apply. We agree with defendant that simply because he plead guilty to providing material support to a terrorist organization, the enhancement does not automatically apply. We disagree with defendant, however, and take the position that Guerra Blanco's conduct does support the application of the enhancement. Guerra Blanco argues that his actions were not "involved, or intended to promote, a federal crime of terrorism."

Because the statute to which the defendant pleaded guilty is listed in § 2332b(g)(5)(B), the only other requirement that needs to be fulfilled for the Terrorism Enhancement to apply is to determine if the defendant's conduct "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." *Arcila Ramirez*, at 849-850; U.S.S.G. § 3A1.4(a). The facts of the case agreed and stipulated to by the defendant conclusively demonstrate that the Terrorism Enhancement applies.

The defendant agreed that:

> ISIS engages in and has engaged in terrorist activity and that ISIS engages in and has engaged in terrorism[1].... ISIS has equated the value of propaganda on its behalf

---

[1] Terrorism is defined at 18 U.S.C. § 2331 as: the term "international terrorism" means activities that—
**(A)** involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;

13

>  to that of ISIS soldiers waging violence… ISIS has called for people to contribute their social media services to its cause to invigorate its terrorists.... ISIS use[s] these online tools [social media applications, video sharing sites, and other internet-based sites and applications] to distribute their official communications inexpensively, safely, and broadly. In addition, ISIS … use[s] these online tools to communicate (publicly and privately) with sympathizers and potential recruits, and to distribute their … messages to legitimate media outlets, in order to draw attention to the organization, recruit new members, raise money, and promote violent jihad, all in an effort to carry out the terrorism related goals of the organization[].

DE 27, pp. 1-2.

So as a general matter, the defendant pleaded guilty to attempting to provide material support to ISIS and admitted in the Statement of Facts that he knew ISIS engages and engaged in terrorism, and agrees that terrorism involves acts that appear to be intended to "intimidate or coerce a civilian population, to influence the policy of government by intimidation or coercion, or to affect the conduct of a government," all three of which answer in the affirmative the question at issue: whether defendant's conduct was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." *Arcila Ramirez*, at 849-850; U.S.S.G. § 3A1.4(a).

More specifically, the Statement of Facts demonstrates that the defendant caused to be translated into Spanish, for the first time, an article/document that detailed how to use a vehicle to kill people. There is no other purpose to produce this article/document than to encourage ISIS supporters to kill non-believers. This article provided encouragements and instructions on how to effectively conduct a vehicle attack against pedestrian targets. The making and dissemination of

---

**(B)** appear to be intended—
**(i) to intimidate or coerce a civilian population;**
**(ii) to influence the policy of a government by intimidation or coercion; or**
**(iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping;** and
**(C)** occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum;

this alone would satisfy the factual findings necessary to support the application of the terrorism enhancement. This article/document promoted a federal crime of terrorism.

The facts set forth in defendant's own pleading (and agreed upon in the factual basis in support of the plea), support the application of the terrorism enhancement. Defendant states, in summary: the defendant's criminal conduct was to assist unofficial ISIS media networks to increase the dissemination of pro-ISIS messages and propaganda … Defendant assisted in the production of Spanish-translated ISIS media and coordinated translations into various other languages…. When the defendant identified an ISIS sympathizer with foreign language ability, he would attempt to recruit and maintain communication with that person by creating new accounts for private discussions…. The defendant would use virtual private networks … to obfuscate his true location… Essentially, the defendant took up ISIS' call for its supporters to provide services in online media operations on its behalf. (DE 45, at 2.)

What are the proper and logical inferences that this Court can make from these facts? Guerra Blanco's conduct, certainly by a preponderance of the evidence, involved and intended to promote a federal crime of terrorism.

### VI.  Title 18, United States Code, Section 3553(a) Factors

The factors most relevant to this case are:

(a) The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
…

The sentence imposed must reflect the seriousness of the offense, promote respect for the law, provide just punishment, and the need to afford adequate deterrence. These factors support a twenty-year sentence. As described above in the Offense Conduct section, the defendant's conduct was extremely serious. Arguably, his conduct couldn't be more serious in that the videos and articles/documents he produced for dissemination were how to kill those who opposed ISIS. The circumstances of the criminal conduct involve a foreign terrorist organization that this defendant placed above his country and its citizens. He supported and attempted to encourage others to support and act on behalf of ISIS.

A twenty-year sentence would be just punishment for the actions of the defendant. He acted without regard for human life. Further, a twenty-year sentence would provide adequate deterrence to others. A severe sentence for this conduct would hopefully deter others from attempting to act in a similar way.

### VII. <u>Conclusion</u>

The government certainly recognizes that this court has the discretion to sentence Defendant to a sentence below the statutory maximum of twenty years, however, we assert that the court should not, under these facts and circumstances, exercise such discretion. Based upon the above, pursuant to Title 18, United States Code, Section 3553(a), the factors to be considered

in imposing sentence, a twenty-year sentence is reasonable and appropriate.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By: /s/ *Karen E. Gilbert*
Karen E. Gilbert
Assistant United States Attorney
Florida Bar No. 771007
99 N.E. 4th Street, Suite 815
Miami, Florida 33132
Tel: (305) 961-9161
Fax:(305) 536-4675
karen.gilbert@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

s/ *Karen E. Gilbert*
Karen E. Gilbert
Assistant United States Attorney